IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HOB Entertainment, Inc., and House of Blues Myrtle Beach Restaurant Corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> SilkHOB, LLC and SilkRoad Equity, LLC, <br><br> Defendants, <br><br> SilkHOB, LLC, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> Live Nation, Inc., <br><br> Third-Party Defendant. | Civil Action No.: 4:08-cv-02783-TLW-SVH |

## ORDER

The plaintiffs, HOB Entertainment, Inc. and House of Blues Myrtle Beach Restaurant Corporation ("plaintiffs"), brought this civil action on August 6, 2008. (Doc. # 1). House of Blues Myrtle Beach Restaurant Corporation ("House of Blues") is a subsidiary of HOB Entertainment, Inc. ("HOB Entertainment"). The plaintiffs allege that defendant SilkHOB, LLC ("SilkHOB") entered into a licensing and promotional services agreement with House of Blues and subsequently breached it. The plaintiffs further allege this agreement provided that SilkHOB would indemnify House of Blues for operating losses incurred during the course of the agreement and that defendant SilkRoad Equity, LLC ("SilkRoad Equity") would serve as a guarantor for SilkHOB's indemnity obligations.

1

In their original complaint, the plaintiffs sought a declaratory judgment and brought causes of action for breach of contract and promissory estoppel. (Doc. # 1). In their amended complaint, the plaintiffs seek a declaratory judgment and bring causes of action for breach of contract, promissory estoppel, breach of contract accompanied by fraudulent act, breach of fiduciary duty, and piercing the corporate veil of SilkHOB. (Doc. # 90). In their answers, among other defenses, SilkHOB and SilkRoad Equity deny the existence of a licensing and promotional services agreement between the parties. (Docs. 93, 94). SilkHOB also asserts alternative counterclaims against the plaintiffs for breach of fiduciary duty, breach of contract, breach of contract accompanied by a fraudulent act, fraud, and misrepresentation. (Doc. # 94). Additionally, SilkHOB asserts third-party claims against Live Nation, Inc. ("Live Nation"), which SilkHOB alleges took over responsibility for the plaintiffs' relationship with SilkHOB and controlled the decision-making over the operation of the House of Blues Myrtle Beach venue after Live Nation acquired HOB Entertainment. (Doc. # 94). These third-party claims include breach of fiduciary duty, breach of contract, breach of contract accompanied by a fraudulent act, fraud, and misrepresentation. (Doc. # 94).

On March 15, 2010, the plaintiffs and Live Nation filed a motion for summary judgment regarding the counterclaims asserted against the plaintiffs and the third-party action brought against Live Nation. (Doc. # 69). They also sought summary judgment as to their ability to pierce the corporate veil of SilkHOB. (Doc. # 69). SilkHOB filed a response (Doc. # 78), and the plaintiffs and Live Nation filed a reply (Doc. # 84). On June 22, 2010, the plaintiffs and Live Nation also filed a motion to dismiss or, in the alternative, for summary judgment regarding the counterclaims and third-party action. (Doc. # 97). SilkHOB filed a response. (Doc. # 105). A hearing was held before this Court on November 29, 2010 on the summary judgment motion

(Doc. # 69) and motion to dismiss (Doc. # 97). (Entry # 121). The Court has considered the applicable law, arguments of counsel, and memoranda submitted. These motions are now ripe for disposition.

## FACTS

This dispute centers on a licensing and promotional services agreement that the plaintiffs allege exists between House of Blues and SilkHOB. In their memoranda in relation to the motions before the Court, both sides refer to a document entitled "Licensing and Promotional Services Agreement Summary Term Sheet" ("Agreement" or "summary term sheet") dated August 26, 2005, (Doc. 69, Attach. 2) but they disagree over the effect of this Agreement. The plaintiffs assert that SilkHOB agreed to provide the House of Blues Myrtle Beach location with "advisory, promotional, and marketing services" for the time period of July 4, 2005, to July 4, 2008, in exchange for a 70% share of the profits realized at the location. According to the plaintiffs, SilkHOB also agreed to indemnify, defend, and hold House of Blues harmless from and against operating losses incurred in connection with operating the Myrtle Beach venue for the time period of July 4, 2005, to July 4, 2008, provided that SilkHOB's indemnity liability would not exceed $3,000,000. In addition, the plaintiffs argue SilkHOB agreed that its parent entity, SilkRoad Equity, would serve as guarantor for any indemnity obligations owed by SilkHOB to House of Blues. The plaintiffs assert that SilkHOB was regularly sent invoices documenting losses sustained by the Myrtle Beach location and that the defendants failed to indemnify House of Blues for those losses, which exceeded $3,000,000.

The defendants argue that the Agreement was a summary term sheet which merely provided a framework for further negotiations as to the specific terms of a final agreement. They assert that the Agreement contemplated the execution of additional documents that never came to

fruition: (1) a licensing and promotional services agreement; (2) an indemnity agreement for operating losses at the Myrtle Beach venue; and (3) a guaranty agreement. They argue that the Agreement also contemplated additional steps, including the creation of an Operating Board through which the defendants would have a voice in how the Myrtle Beach venue was operated. The defendants assert that after this summary term sheet was executed and in spite of SilkHOB's attempts to negotiate a final agreement, the plaintiffs failed to pursue such an arrangement. Therefore, none of the conditions precedent to a final agreement occurred, and no actual licensing and promotional services agreement came into existence. Furthermore, the defendants dispute receiving invoices regularly from the plaintiffs.

In addition to refuting the existence of a contract, SilkHOB also asserts counterclaims against the plaintiffs and third-party claims against Live Nation that are contingent upon a finding that SilkHOB is liable in any manner on an alleged contract. Through these alternative counterclaims and third-party claims, SilkHOB essentially argues that the Myrtle Beach venue was not operated in a manner consistent with the representations made by House of Blues to SilkHOB; that adequate support was not provided to the Myrtle Beach venue, including but not limited to marketing, booking talent, and staffing; and that SilkHOB was not kept informed of the financial status of the venue.

## SUMMARY JUDGMENT STANDARD

Before the Court are the plaintiffs' and Live Nation's motion for summary judgment (Doc. # 69) and motion to dismiss or, in the alternative, for summary judgment (Doc. # 97). The defendants argue that the motion to dismiss should be treated as a motion for summary judgment. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56." The plaintiffs and Live Nation attached deposition excerpts and discovery responses to their motion to dismiss.[1] They also cite to these documents in their memorandum in support of the motion. Therefore, because this Court has taken these additional matters outside the pleadings into consideration, this Court will treat the motion to dismiss as a motion for summary judgment. See Herbert v. Saffell, 877 F.2d 267, 270 (4th Cir. 1989) (treating a Rule 12(b)(6) dismissal as a summary judgment where the district court considered materials outside the pleadings).

Pursuant to Federal Rule of Civil Procedure 56(a), the moving party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the plaintiffs bear the initial responsibility of informing this Court of the basis for their motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires that the plaintiffs identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which they believe demonstrate the absence of a genuine dispute of material fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the plaintiffs bear this initial responsibility, the defendants, as the nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 324; Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61 (1970). In satisfying this burden, the defendants must offer more than a mere "scintilla of

---

[1] HOB Entertainment, Inc., House of Blues Myrtle Beach Restaurant Corporation, and Live Nation, Inc. are hereinafter referred to collectively as "plaintiffs" for the purposes of this Order.

5

evidence" that a genuine dispute of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the defendants must produce evidence on which a jury could reasonably find in their favor. See Matsushita, 475 U.S. at 587.

In considering the plaintiffs' motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the defendants as the nonmoving party. See Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

## DISCUSSION

### a. Standing and Capacity

The plaintiffs seek summary judgment in relation to the counterclaims and third-party claims asserted by SilkHOB. In support of their motion, the plaintiffs assert that SilkHOB is not a legitimate jural entity and thus lacks standing and capacity to sue. The plaintiffs present two arguments in this regard. First, they argue that SilkHOB is not a person for purposes of maintaining an action in this Court because it lacks the attributes of a corporation. Their allegation that it lacks the attributes of a corporation is based on SilkHOB's alleged failure to observe corporate formalities and engage in any substantive activity following its filing as a limited liability company in Delaware in 2005. Second, the plaintiffs argue that SilkHOB has not suffered an injury in fact because it never recorded any losses in any tax filing or other document. The Court will address each of these arguments.

As for the plaintiffs' argument that SilkHOB is not a person for purposes of maintaining an action in this Court because it lacks the attributes of a corporation, the parties agree that SilkHOB is a limited liability company formed under Delaware law.  A limited liability company is designed to "permit persons or entities ('members') to join together in an environment of private ordering to form and operate the enterprise under [a limited liability company] agreement with tax benefits akin to a partnership and limited liability akin to the corporate form."  Elf Atochem N. Am., Inc. v. Jaffari, 727 A.2d 286, 287 (Del. 1999).  South Carolina recognizes foreign limited liability companies and applies the laws of the state under which such an entity is organized to "govern its organization and internal affairs and the liability of its managers, members, and their transferees."  S.C. Code Ann. § 33-44-1001(a).  Delaware law states that "[a] limited liability company is formed at the time of the filing of the initial certificate of formation in the office of the Secretary of State or at any later date or time specified in the certificate of formation . . . ."  Del. Code Ann. tit. 6, § 18-201(b) (West).  Moreover, once a limited liability company is formed under Delaware law, it "shall be a *separate legal entity*, the existence of which as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation."  Id.  Delaware law also provides that a limited liability company shall have "such powers and privileges as are necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the limited liability company."  Id. tit. 6, § 18-106(b).  The power to sue or be sued must necessarily be included among these powers.  See Poore v. Fox Hollow Enter., No. C.A. 93A-09-005, 1994 WL 150872 (Del. Super. Ct. March 29, 1994) (finding that because a limited liability company is more similar to a corporation than a partnership, it could only appear in court with the representation of legal

7

counsel); Guthridge v. Pen-Mod, Inc., 239 A.2d 709, 711 (Del. Super. Ct 1967) (stating that "corporations like people, may sue or be sued").

The plaintiffs have presented insufficient evidence that SilkHOB is no longer recognized as a valid legal entity under Delaware law. No evidence has been presented showing that its certificate of formation has been cancelled or that it has been dissolved in some manner. While the alleged failure of SilkHOB to observe corporate formalities and engage in substantive activity since its formation may constitute support for piercing SilkHOB's veil, it does not mean that this Court should refuse to recognize SilkHOB's existence as a separate legal entity for purposes of defending this action and pursuing counterclaims. SilkHOB is indicated as the party that entered into the Agreement with House of Blues and HOB Entertainment, whatever the effect of that Agreement may be. Without sufficient evidence that SilkHOB no longer exists as a legal entity, this Court recognizes SilkHOB as a valid party in this lawsuit.[2]

The plaintiffs argue that SilkHOB lacks standing because it has not suffered an injury in fact. The plaintiffs base their argument on their allegation that SilkHOB never recorded any losses in any tax filing or other financial document. In order to satisfy the standing requirements of Article III of the Constitution, a party "must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the [other party]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc., 528 U.S. 167, 180-81 (2000).

---

[2] The case the plaintiffs' cite in support of their argument that only a person can be a party for purposes of prosecuting a lawsuit is inapposite to the facts here because it involved the question of whether the Georgia Department of Industrial Relations could intervene in a case to challenge a workmen's compensation award. Dep't of Indus. Relations v. Travelers Ins. Co., 170 S.E. 883, 886 (Ga. 1933). In that case, the court held that the state agency lacked the attributes of a corporation and thus was not a legal entity that could sue or be sued. Id. In this case, SilkHOB is a limited liability company, which, similar to a corporation, exists as a separate legal entity under state law. See Del. Code Ann. tit. 6, § 18-201(b) (West).

SilkHOB's counterclaims and third-party claims are brought under Federal Rule of Civil Procedure 8(d)(2), which allows parties to assert claims in the alternative, and are contingent upon SilkHOB being held liable in any manner on an alleged contract. If SilkHOB is ultimately found liable and is obligated to indemnify House of Blues and HOB Entertainment for $3,000,000 of the operating losses they allegedly sustained, SilkHOB will clearly have suffered an injury at that point. Further, the threat that SilkHOB may be found liable under a contract is actual or imminent based on the fact that a lawsuit has been filed against it. Additionally, SilkHOB's counterclaims are compulsory in nature, meaning that under Federal Rule of Civil Procedure 13(a), they must be asserted in response to the plaintiffs' claims. Therefore, this Court concludes that SilkHOB has standing to assert its counterclaims and third-party claims.

The plaintiffs also argue that SilkHOB lacks capacity. Federal Rule of Civil Procedure 17 deals with the capacity of a party to sue or be sued. The first two parts of the rule deal with individuals and corporations. The third part deals with all other parties and provides that their capacity is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). For a foreign limited liability company, South Carolina law applies the law of the jurisdiction under which such an entity is organized to govern its organization and internal affairs and the liability of its members. S.C. Code Ann. § 33-44-1001(a). The parties agree that SilkHOB was formed under Delaware law, which provides that a limited liability company comes into existence when its certificate of formation is filed and continues to exist until its certificate is cancelled. Del. Code Ann. tit. 6, § 18-201(b) (West). No evidence has been presented showing that the certificate of formation for SilkHOB has been cancelled or that it has been dissolved. Consequently, this Court finds there is no basis to conclude that SilkHOB lacks capacity to maintain its counterclaims and third-party claims.

**b. Certificate of Authority**

The plaintiffs argue that SilkHOB cannot maintain its counterclaims and third-party claims because it lacks a certificate of authority to transact business in South Carolina. This argument also relates to SilkHOB's capacity to maintain its claims.[3] See Chet Adams Co. v. James F. Pederson Co., 307 S.C. 33, 36-37, 413 S.E.2d 827, 829 (1992) (holding that the failure of a foreign corporation to comply with a certification statute affects that corporation's capacity to sue). South Carolina Code Annotated section 33-44-1008 provides that "[a] foreign limited liability company transacting business in this State may not maintain an action or proceeding in this State unless it has a certificate of authority to transact business in this State." The parties agree SilkHOB is a limited liability company formed under Delaware law, and SilkHOB does not dispute that it lacks a certificate of authority in South Carolina. Despite this, however, SilkHOB asserts that it should still be able to pursue its counterclaims and third-party claims and advances numerous arguments in support of its position.

One of the arguments that SilkHOB asserts is that it is not subject to the statute because it was not "transacting business" for purposes of section 33-44-1008. The test for determining whether a foreign limited liability company is transacting business for purposes of a certification statute is stricter than the test for determining whether such an entity is subject to the jurisdiction of a South Carolina court. See Carolina Components Corp. v. Brown Wholesale Co., 272 S.C. 220, 222, 250 S.E.2d 332, 333 (1978) ("[I]t should be noted that while a foreign corporation may be doing business within a state sufficient to subject it to jurisdiction, such a determination is not conclusive that a corporation is doing business within the state to the extent of requiring

---

[3] Coastal Liquids Transportation, L.P. v. Harris County Appraisal District, cited by the plaintiffs in support of their argument that SilkHOB lacks capacity, is a case where a limited partnership was held to lack capacity to challenge a tax appraisal because it failed to properly register in Texas as a foreign limited partnership. 46 S.W.3d 880 (Tex. 2001).

compliance with our domestication statute.")[4]; Jacobs v. Ass'n of Indep. Coll & Sch., 265 S.C. 459, 466-67, 219 S.E.2d 837, 840-41 (1977) ("It is well established that the test for [in personam jurisdiction] requires fewer contacts than the test for [domestication statutes]."); State v. Ford Motor Co., 208 S.C. 379, 392-93, 38 S.E.2d 242, 248 (1946) ("A foreign corporation may be doing business in a state to bring it within the jurisdiction of the court and amenable to its process and yet not obtain a status to be regulated by a state statute or bring it within the statutory provision requiring a license for operation of such foreign corporation."). In addition, acts that are preliminary to the doing of business, such as negotiating a contract, are ordinarily not sufficient to constitute transacting business for purposes of a certification statute. See Irwin Glass Co. v. Buchanan, 289 F. 348, 354 (3d Cir. 1923) (holding that a plaintiff corporation was only doing "those acts which are preliminary to the doing of business for which it was incorporated"); Cont'l Prop., Inc. v. Ullman Co., 436 F. Supp. 538, 542 n.6 (E.D. Va. 1977) (quoting Auto. Material Co. v. Am. Standard Metal Prod. Corp., 158 N.E. 698, 703 (Ill. 1927)) ("It is also established by the authorities of this country that a foreign corporation is not doing, transacting, carrying on, or engaging in business in a state, within the meaning of such statutes, by the doing of acts therein which are merely preliminary to the transaction of the business in which the corporation is to engage . . . ."); Vines v. Romar Beach, Inc., 670 So. 2d 901, 903-04 (Ala. 1995) (finding that a foreign corporation was subject to Alabama's certification statute because its actions "were not mere incidental steps toward doing business"); Watson Constr. Co. v. Amfac Mortgage Corp., 606 P.2d 421, 429 (Ariz. Ct. App. 1979) (holding that "[n]egotiations leading to a contract . . . do not, in and of themselves[,] constitute 'doing business'" and reasoning that "[t]o hold otherwise would require all foreign corporations desiring to engage in

---

[4] A domestication statute is similar in nature to a certification statute in that it calls for the licensing and registration of foreign corporations doing business in South Carolina. See Carolina Components, 272 S.C. at 222, 250 S.E.2d at 333.

11

business negotiations in Arizona to qualify as Arizona corporations even though those negotiations may prove fruitless"); 19 C.J.S. Corporations § 992 (stating that a foreign corporation is not doing business in state sufficient to subject it to regulation or require it to obtain authorization to transact business, "by the doing of acts therein which are merely preliminary to the transaction of the business for which the corporation is organized").

While the parties dispute the existence of a final agreement, at this stage of the litigation, the parties agree that SilkHOB, at a minimum, was engaged in negotiations to enter into a licensing and promotional services agreement. Further, SilkHOB argues that the summary term sheet entered into between the parties was merely a part of those negotiations. Case law indicates that an act preliminary to the transaction of business, such as negotiating a contract, is not sufficient to subject a party to the requirements of a certification statute. If ultimately SilkHOB is found to have entered into a licensing and promotional services agreement as alleged by the plaintiffs, such a finding would constitute support for subjecting SilkHOB to the domestication statute, but it would not be determinative of the issue. See Cont'l Prop., 436 F. Supp. at 542 n.6 (quoting Auto. Material, 158 N.E. at 703) (stating that "transacting business" means more than entering into contract but rather "it means performing the work or business called for by the contract"); L.M. White Contracting Co. v. St. Joseph Structural Steel Co., 488 P.2d 196, 199 (Ariz. Ct. App. 1971) (citing Filmakers Releasing Org. v. Realart Pictures of St. Louis, Inc., 374 S.W.2d 535, 528 (Mo. Ct. App. 1964)) ("In determining whether a foreign corporation is 'doing business' in the state, the test is not what Could have been done under a contract but what is Actually done."); 19 C.J.S. Corporations § 992 (noting courts have held that entering into a contract is an act preliminary to the transaction of business). Consequently, after construing all facts and reasonable inferences in a light most favorable to SilkHOB as the

nonmoving party, this Court does not reach the conclusion that SilkHOB was transacting business in South Carolina for purposes of South Carolina Code Annotated section 33-44-1008.[5]

### c. Veil-piercing and Alter-ego Claims

The plaintiffs also seek summary judgment as to their ability to pierce SilkHOB's veil and impose liability on its members.[6] Additionally, the plaintiffs assert that liability should be imposed on SilkHOB's members under an alter-ego theory of liability. As an initial matter, this Court must determine what law to apply to these questions and is guided by the principle that "a federal court sitting in diversity must apply the choice of law rules of the state in which it sits." Joye v. Heuer, 813 F. Supp. 1171, 1173 (D.S.C. 1993) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941)). Based on South Carolina Code Annotated section 33-44-1001(a), which provides that the laws of the state under which a foreign limited liability company is organized govern the liability of its members, Delaware law controls the veil-piercing and alter-ego questions in this case. See also Weber v. U.S. Sterling Sec., Inc., 924 A.2d 816, 822-23 (Conn. 2007) (applying a Connecticut statute, which is analogous to South Carolina Code Annotated section 33-44-1001(a), to determine that Delaware law governed the

---

[5] SilkHOB argues that even if it is subject to section 33-44-1008, it can correct this defect by obtaining a certificate of authority while this lawsuit is being litigated. The case asserted by SilkHOB in support of its position, Cost of Wisconsin v. Shaw, provides strong support for its argument. 292 S.C. 435, 436, 357 S.E.2d 20, 21 (1987); see also Chet Adams, 307 S.C. at 35-36, 413 S.E.2d at 828. However, it is not necessary for this Court to decide the issue as the Court concludes that SilkHOB is not subject to section 33-44-1008. SilkHOB also argues and cites cases from other jurisdictions in support of the proposition that foreign corporations and limited liability companies should be allowed to assert counterclaims and third-party claims without filing for a certificate of authority. While this position is not without merit, it is not necessary for this Court to rule on this argument in light of the analysis set forth.

In their memorandum, the plaintiffs' refer to a website called profilemat where Matthew Roszak, the party who signed the summary term sheet on behalf of SilkHOB, LLC, is listed as a member of the board for House of Blues; to a press release on www.silkroadequity.com where House of Blues is listed as part of SilkRoad Equity's portfolio of companies; to a press release on Roszak's blog where House of Blues is again listed as part of SilkRoad Equity's portfolio of companies; and to matthewroszak.net where the House of Blues' proprietary website is listed. See Doc. 69, Attach. 4. These references to SilkHOB's relationship with House of Blues are also not sufficient to support a finding that SilkHOB was transacting business under section 33-44-1008.

[6] A limited liability company under Delaware law is composed of one or more members. See Del. Code Ann. tit. 6, § 18-101(6) (West). Matthew Roszak, who is a member of SilkRoad Equity, LLC, testified that SilkRoad is the sole member of SilkHOB, LLC. See Roszak Dep. 116, July 10, 2009 (Doc. # 69, Attach. 3).

issue of whether to impose personal liability on the members of a limited liability company formed under Delaware law). The application of Delaware law is also consistent with the internal affairs doctrine under which many states apply the law of the state of incorporation to the issue of whether to pierce a corporation's veil. See In re the Heritage Organization, L.L.C., 413 B.R. 438, 510 (Bankr. N.D. Tex. 2009) (applying internal affairs doctrine to determine that Delaware law governed the question of whether to pierce the veil of a limited liability company created under Delaware law); see generally 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 43.72. As a result, this Court will apply Delaware law to determine whether SilkHOB's veil should be pierced and whether it should be considered the alter-ego of its members.

The veil of a limited liability company formed under Delaware law may be pierced under the proper circumstances. See Wellman v. Dow Chemical Co., No. 05-280-SLR, 2007 WL 842084, at *2 (D. Del. Mar. 20, 2007) ("Under Delaware law, a limited liability company formed under the Delaware Limited Liability Company Act is treated for liability purposes like a corporation."); see also NetJets Aviation, Inc. v. LHC Commc'n, LLC, 537 F.3d 168, 184 (2d Cir. 2008) (holding that a genuine issue of material fact existed regarding whether a Delaware limited liability company was the alter-ego of its sole member-owner). In determining whether to pierce SilkHOB's veil, this Court is guided by the general rule that "[t]he shareholders of a corporation and the members of [a limited liability company] generally are not liable for the debts of the entity, and a plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces 'a difficult task.'" NetJets Aviation, 537 F.3d at 176 (quoting Harco Nat'l Ins. Co. v. Green Farms, Inc., No. CIV. A. 1331, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989)). Accordingly, "[t]he legal entity of a corporation will not be disturbed until sufficient

reason appears." Harco Nat'l Ins., 1989 WL 110537, at *4. "In an appropriate case, however, the corporate veil may be pierced." Id. Although under Delaware law there is no single formula for piercing the veil of a corporation, Delaware courts "have only been persuaded to 'pierce the corporate veil' after substantial consideration of the shareholder-owner's disregard of the separate corporate fiction and the degree of injustice impressed on the litigants by recognition of the corporate entity." Midlands Interiors, Inc. v. Burleigh, No. CIV. A. 18544, 2006 WL 3783476, at *3 (Del. Ch. Dec. 19, 2006) (citing Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 989 (Del. Ch. 1987); David v. Mast, No. 1369-K, 1999 WL 135244, at *2-*3 (Del Ch. Mar. 2, 1999)).

> The plaintiffs also argue that SilkHOB should be treated as the alter-ego of its members:
>
> [A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

Harco Nat'l Ins., 1989 WL 110537, at *4 (quoting United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1104 (D. Del. 1988) ("Golden Acres"))[7]; see also NetJets Aviation, 537 F.3d at 176-77. Furthermore, no single factor by itself can "'justify a decision to disregard the corporate entity,'" but some combination is required along with "'an overall element of injustice or unfairness.'" Id. at *5 (quoting Golden Acres, 702 F. Supp. at 1104); see also NetJets Aviation, 537 F.3d at 177. "Simply phrased, the standard may be restated as: 'whether [the two entities]

---

[7] For its alter-ego analysis, the Golden Acres court adopted the reasoning applied by the Fourth Circuit Court of Appeals in Dewitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 685-87 (4th Cir. 1976) (applying South Carolina law). See Golden Acres, 702 F. Supp. at 1104. This is the same case on which South Carolina courts have based their test for veil-piercing. See Sturkie v. Sifly, 280 S.C. 453, 457-58, 313 S.E.2d 316, 318 (Ct. App. 1984) (citing Dewitt Truck Brokers, 540 F.2d at 685); see also Multimedia Publ'g of S.C., Inc. v. Mullins, 314 S.C. 551, 556, 431 S.E.2d 569, 573 (1993) (holding that the trial court correctly applied the *Sturkie* analysis).

operated as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them.'" Harper v. Del. Valley Broadcasters, Inc., 743 F.Supp. 1076, 1085 (D. Del. 1990) (quoting Mabon, Nugent & Co. v. Tex. Am. Energy Corp., No. CIV. A. 8578, 1990 WL 44267, at *5 (Del. Ch. Apr. 12, 1990)); see also NetJets Aviation, 537 F.3d at 177.

Accordingly, key to a court's analysis in determining whether to pierce a limited liability company's veil or to find that a limited liability company is the alter-ego of its members is a showing that it would be unjust or inequitable for this Court to recognize the limited liability company as a separate entity. Also key to a court's analysis is whether the members have disregarded the distinct and separate nature of the limited liability company of which they are a part. The plaintiffs argue and submit deposition testimony indicating that SilkHOB was never capitalized, observed no formalities, and kept no business records. See Roszak Dep. 116-18, 127, 164-65, July 10, 2009 (Doc. # 69, Attach. 3). These arguments and this deposition testimony are support for a finding that SilkHOB's members disregarded SilkHOB as a separate entity. In response, SilkHOB asserts that SilkHOB was created as a "special purpose vehicle" to facilitate a licensing and promotional services agreement between SilkHOB and the plaintiffs. See Id. at 126-27. According to SilkHOB, when no final agreement materialized, the purpose for which SilkHOB was created no longer existed and there was no need to capitalize SilkHOB. Viewing all facts and reasonable inferences in a light most favorable to SilkHOB as the nonmoving party, a jury could reasonably find that a final licensing and promotional services agreement never materialized and that SilkHOB was not obligated to indemnify House of Blues and HOB Entertainment for their operating losses. Such a finding would also mean that no inequity or injustice would result from this Court's continued recognition of SilkHOB as an

entity separate from its members. As a result, in light of the remaining issue of fact regarding whether an enforceable licensing and promotional services agreement exists, the plaintiffs have failed to make a sufficient showing for this Court to find that it would be unjust or inequitable to recognize SilkHOB as a separate legal entity at this stage of the proceedings. Therefore, at this time, this Court does not reach a finding that SilkHOB's veil should be pierced or that it should be declared the alter-ego of its members.[8]

## CONCLUSION

For the reasons set forth herein, the plaintiffs' and Live Nation's motion for summary judgment (Doc. # 69) and their motion to dismiss or, in the alternative, for summary judgment (Doc. # 97) are **DENIED**.

**IT IS SO ORDERED**.

s/Terry L. Wooten_____  
TERRY L. WOOTEN  
United States District Judge

January 28, 2011

Florence, South Carolina

---

[8] For purposes of this Order, the application of South Carolina law to the veil-piercing and alter-ego issues would not change the outcome. South Carolina courts have held that in order to pierce the corporate veil, "an element of injustice or fundamental unfairness" must result from the continued recognition of the corporate identity. See Multimedia Publ'g of S.C., 314 S.C. at 553, 431 S.E.2d at 571. Similarly, the South Carolina Supreme Court has held that "[a]n alter-ego theory requires a showing of total domination and control of one entity by another *and inequitable consequences caused thereby*." Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty., 371 S.C. 224, 237, 638 S.E.2d 685, 692 (2006) (emphasis added).